OPINION

This matter arises out of a petition for a writ of habeas corpus. This Court previously ordered the immediate release of Petitioner. In this opinion, we set forth the grounds for that release and set forth the law and procedures for indirect civil and criminal contempt proceedings.
I
The relevant facts gleaned from the record are as follows. Pursuant to a 2009 divorce decree, Petitioner was required to make prospective payments to his ex-wife for the support of their two children aged 18 and 16. The decree did not specify how much was to be paid and when payments were to cease as to each child; a matter of contention between the parties. At a civil contempt proceeding filed by the ex-wife about three years later, both parties appeared and Petitioner was found in indirect civil contempt for failure to pay the child support since 2009 and ordered to pay $9,760 in arrearages. The ex-wife later initiated a second civil contempt action against Petitioner, now alleging non-payment of the court-ordered arrearages. The family court ordered the Petitioner to appear at a December 5, 2013 hearing to show cause why he should not be held in contempt for failing to obey its previous order and further informing him that he may hire an attorney. Petitioner failed to appear at the hearing. After verifying that Petitioner was duly served, the family court proceeded to try the matter without Petitioner, and found Petitioner in indirect criminal contempt, asserting that “[the ex-wife] proved beyond a reasonable doubt” that Petitioner failed to comply with the order of the Court to pay the $9,760. W.R. Fam. Ct. Response Brief at 3 (January 27, 2014). A bench warrant for nonappearance was then issued by the family court, pursuant to which Petitioner was arrested and appeared at a bench warrant hearing on January 8, 2014. At that hearing, the family court asked Petitioner to show cause why he should not be found in contempt for his non-appearance and alleged failure to pay his court ordered child support, then proceeded to find Petitioner in indirect criminal contempt of court, sentencing him to six (6) months incarceration. Petitioner was remanded to the custody of the Department of Corrections the same day. In its written decision of January 18, 2014, the family court also ordered Petitioner to pay his child support arrear-ages after his release.
The record shows that the December 5, 2013 OSC hearing—a civil matter—was not formally converted into a criminal contempt proceeding with any notification to Petitioner of the criminal charge. The record further shows that the family court proceeded to a criminal contempt proceeding at the January 8, 2014 bench warrant hearing without notification to Petitioner and without advisement of his fundamental rights. Finally, the record fails to show how the criminal standard of “beyond a reasonable doubt” was met in a hearing where Petitioner had no warning that he faced a criminal charge and was not present to offer his defense.
On January 21, 2014 Petitioner submitted a hand-written letter to this Court asserting that his civil rights had been violated by the family court during the January 8, 2014 bench warrant proceeding and therefore he is being illegally de *19 tained. This Court accepted the letter as a petition for a writ of habeas corpus. A writ of habeas corpus was issued directing the Department of Corrections to appear on January 28, 2014 to show cause why Petitioner should not be released. Following the hearing, the Court ordered Petitioner’s immediate release.
II
Due process is “fundamental fairness” in a Navajo cultural context. In re Est. of Goldtooth Begay #2, 7 Nav. R, 29, 31 (Nav.Sup.Ct.1992) (citing Navajo Nation v. Platero, 6 Nav. R. 422, 424 (Nav.Sup.Ct.1991)). Due process requires courts to ensure fundamental fairness in all tribal actions. Keeswood v. The Navajo Tribe, 2 Nav. R. 46, 50 (Nav.Ct.App.1979). As such, due process requires notice and an opportunity to be heard before the tribunal. In re Certified Questions II, 6 Nav. R. 105, 118-119 (Nav.Sup.Ct.1989).
In this case, petitioner was jailed under indirect criminal contempt for nonappearance at the December 5, 2013 OSC proceeding and noncompliance with a court order to pay child support arrearages. We have previously noted that “[e]ivil contempt proceedings are used to preserve and enforce the rights of litigants, and to compel obedience to the orders, writs, mandates and decrees of the court. Criminal contempt proceedings are used to preserve the authority and vindicate the dignity of the court.” In re Contempt of Mann, 5 Nav. R. 125, 127 (Nav.Sup.Ct.1987) (internal citations omitted). We have noted a distinction between civil contempt remedies for non-payment of civil judgments for child support versus other kinds of civil debts. In Pelt v. Shiprock Dist. Ct., 8 Nav. R. 111 (Nav.Sup.Ct.2001), we prohibited the jailing of individuals who fail to pay a civil judgment on a contractual debt. The prohibition forbids any deprivation of liberty if the individual “had not the material means of fulfilling his or her material obligations,” but it does permit jailing “persons who simply refuse to honour a debt which they are able to pay.” The failure to fulfill a contractual obligation may legitimately constitute a “criminal offense” in the following circumstances:
if the debtor acts with malicious or fraudulent intent; or if a person deliberately refuses to fulfill an obligation; irrespective of his reasons therefore, nor if his inability to meet a commitment is due to negligence.
Pelt, 8 Nav. R. at 117 (citing In the Matter of Coetzee, Case No. CCT 19/94 (Constitutional Court of South Africa, September 22,1995)).
As set forth in Pelt, civil contempt may never be used to detain any individual solely for non-payment of contractual debts. However, the Court noted the general acceptance in other jurisdictions that non-payment of child support is excepted from this prohibition. Id. at 117 (internal citations omitted) (stating that “the prohibition of imprisonment for debt does not include jailing for the failure to pay child support as civil contempt.”). A civil contempt proceeding may be initiated by a party upon the filing of an OSC action for non-payment of child support, and the court may consider detention. So long as the detention is non-punitive and the defendant has the power to comply with the underlying order, jailing solely for nonpayment of child support for civil contempt is not prohibited under Navajo law.
In this case, the family court proceeded without notice to convert a child support matter to a criminal contempt proceeding. Criminal contempt of court is a crime like all other crimes. It has the potential to reflect negatively on one’s background for a lifetime. No person *20 should be blindsided by its ramifications and no court should disregard its duty to apply the rules of criminal procedure to safeguard the due process rights of the person allegedly in contempt. Fundamental civil rights in criminal contempt proceedings must therefore be afforded. We take this opportunity to provide future guidance to trial court judges on the procedures to be utilized in indirect criminal contempt proceedings.
Firstly, criminal contempt is a criminal offense, and no person may be charged with criminal offenses without due notice to the defendant. See Mann, 5 Nav. R. at 128 (person must be “notified of the charges”). Secondly, criminal contempt charges are separate charges and must be initiated via the filing of a criminal complaint by the prosecutor when the underlying case is a civil matter for which no statutory authority is provided for criminal contempt.
No private party may initiate criminal contempt actions unless expressly authorized by law. For example, the Domestic Abuse Protection Act (DAPA) specifically allows any person to file an OSC action for criminal contempt. See, e.g., Thompson v. Greyeyes, 8 Nav. R. 476, 486, 5 Am. Tribal Law 400 (Nav.Sup.Ct.2004) (stating that a court may proceed to a criminal contempt proceeding upon motion by any person for an order to show cause (OSC) for violation of a protection order because 9 N.N.C. § 1663(B)(3) expressly empowers the court to find criminal contempt for DAPA violations). No similar authority provides for a court to find criminal contempt in private-party filed OSC actions for non-compliance with child support payment orders.
In Thompson, we stated that the family court lacks jurisdiction to hear a criminal case, and, thus, the proper method for the family court to initiate a criminal charge is for the court to refer the matter for criminal prosecution to the Office of the Prosecutor (prosecutor) to file a criminal complaint in the district court. 8 Nav. R. at 486, 5 Am. Tribal Law 400. Respecting the separations of powers, the prosecutor may then decide to prosecute or not prosecute the criminal contempt.[1] If the prosecutor refuses to prosecute, the trial court in this rare incidence then has the power to appoint a disinterested member of the bar, who is an officer of the court, to prosecute the criminal contempt action to pursue the public interest. The charge is pursued in the name of the Navajo Nation, not any private party. If the contempt charge is for disrespect to or criticism of a judge, that judge shall be disqualified from hearing the contempt charge. In re Summary Contempt of Tuchawena, 2 Nav. R. 85, 88 (Nav.App.Ct.1979). As in all criminal actions, the criminal rules of procedure must be followed. Mann, 5 Nav. R. at 128.
The above requirement for a separate criminal complaint for criminal contempt is only required when the criminal contempt proceeding springs from an underlying civil matter for which no statutory authority is provided for criminal contempt. Otherwise, the court may give the person al *21 leged to be in criminal contempt notice in the form of an order to show cause.[2]
At a minimum, the criminal complaint or OSC notice should inform the person alleged to be in contempt of the nature and particulars of the charge(s); the maximum penalty that could be imposed if found in contempt of court; the essential facts constituting the charge(s); and should indicate the date and place for the hearing on the evidence, giving the party reasonable time to prepare a defense. The opportunity to be heard (to explain alleged contemptuous conduct) at a hearing is imperative. Furthermore, the complaint or notice must inform the party of the right to counsel. OSC criminal contempt notices shall also be served in accordance with Nav. R. Cr. P. 9(c) by delivering a copy to the defendant personally.
Precedent has long stressed the importance for Navajo courts to comply with due process in contempt proceedings, especially when loss of property or liberty can result. Mann, 5 Nav. R. at 128. The touchstone of due process is the opportunity to be heard in a meaningful way. As stated by In re Estate of Plummer, 6 Nav. R. 271, 276 (Nav.Sup.Ct.1990):
Due process rights, viewed as quasi-constitutional rights in our system as far as the Indian Civil Rights Act and Navajo Bill of Rights are concerned, may be asserted only if one can show the denial of the right to an opportunity to joe heard in a meaningful way. We mtlst also remember that the Navajo common law is our constitution, and claims under it are subject to considerations of the community good and Navajo perceptions of moral right.”
Indirect contempt concerning “conduct not in the presence of the judge may not be punished until after notice and hearing.” Tuchawena, 2 Nav. R. at 88. Due process requires “[a] person alleged to be in indirect civil or criminal contempt of court must be notified of the charges, have a right to be represented by counsel, have a reasonable time to prepare a defense, and have an opportunity to be heard.” Mann, 5 Nav. R. at 128. The purpose is to avoid surprises and to provide one with a meaningful opportunity to respond after sufficient preparation. Before conviction, a person “must have been afforded a hearing which complied with due process.” Id, Only after the above due process requirements have been met with regard to notice, can a hearing proceed as to the alleged indirect criminal contempt. At the hearing, the court is to bring the person before the court, advise the person alleged to be in contempt of the specific nature of the charges, inform the person of his/her rights under the law, and provide the person with a meaningful opportunity to be heard.
In this case, the family court without jurisdiction over criminal matters issued a bench warrant when Petitioner failed to appear at the December 5, 2013 hearing. The record shows that the January 8, 2014 bench warrant hearing doubled as a criminal contempt proceeding against the Petitioner. No notice was ever issued informing Petitioner of the indirect criminal contempt charge and advising him of his right to be represented by counsel. Reasonable time to prepare a defense was not provided by scheduling a later hearing to specifically address the alleged contemptuous conduct. The January 8, 2014 bench warrant hearing does not suffice as such a hearing, as Petitioner was not informed *22 that he was before the court to answer to an indirect criminal contempt charge. Petitioner was also not advised of his rights as enumerated in Nav. R.Crim. P. 12(c)(5), particularly his right to counsel. See Mann, 5 Nav. R. at 128 (in indirect criminal contempt cases, the rules of criminal procedure must be followed). The family court’s subsequent explanation—not found in the January 8, 2014 order itself—that it actually found Petitioner in contempt for his non-appearance and “reaffirmed its December 5, 2013 finding of indirect criminal contempt!,]” W.R. Fam, Ct. Response at 4, will not cure due process violations.
In this case before us, the family court also stated the ex-wife proved beyond a reasonable doubt that Petitioner failed to comply with the court’s order at the December 5, 2013 OSC hearing. However, the record fails to show how this standard was met, or why criminal contempt was warranted in order “to preserve the authority and vindicate the dignity of the court.” Mann, Nav. R. at 127.
The Navajo concept of ííshjáni ádoolnííl or the need to make things clear as recognized in Navajo case law, see Milligan v. Navajo Tribal Utility Authority, 6 Am. Tribal Law 731, 734-35 (Nav.Sup.Ct.2006), is essential in finding contempt. The Court must review the order alleged to have been violated and determine if the order was clear as to the duties imposed on the person alleged to be in contempt. Here, Petitioner raised concerns with having to pay child support to adult children, yet the family court merely accepted the ex-wife’s calculation as to what was owed in arrearages. The family court did not determine if the 2009 child support order was clear in imposing a duty on Petitioner to continuously support his adult children.
Trial courts should understand that the exercise of contempt powers should be done with upmost restraint. This is true in any court system but it is particularly true in the Navajo Court system, which prides itself on applying restorative concepts of justice and horizontal concepts of power. The adversarial system which is in existence in our court system creates tension with traditional dispute resolution and some contempt powers may be essential in the adversarial system, but our courts shall limit their application by applying Navajo concepts when applicable.

. In the federal jurisdiction, Rule 42(a) of the Federal Rules of Criminal Procedure addresses indirect criminal contempts that require either the U.S. attorney or counsel appointed by the judge to prosecute that case. Thus, the only role for the judge to perform is to be an impartial fact finder. Similarly, a Navajo judge should request that the Office of the Prosecutor prosecute the contempt. This request should not be confused with a prosecutor deciding to bring an Interference with Judicial Proceedings charge under 17 N.N.C, § 477, which is brought pursuant to the Prosecutor’s own authority and not to authority conferred on the prosecutor by the trial court to vindicate the authority of the Court.

. The notice should conform as nearly as possible to the basic requirements of a criminal complaint in accordance with Nav, R. Cr. P. 8(b).